UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
LION-AIRE CORP.,

            Plaintiff,            <u>MEMORANDUM & ORDER</u>
                                      19-CV-3554 (JS)(ARL)

    -against-

LION AIR INSTALLLATION, INC.;
HOWARD MCCARTHARN; and CHRIS
LAMBOT,

            Defendants.
-------------------------------X
APPEARANCES
For Plaintiff:     Lewis D. Prutzman, Esq.
                 Alyssa C. Goldrich, Esq.
                 Tannenbaum Helpern Syracuse & Hirschtritt LLP
                 900 Third Avenue, 13th Floor
                 New York, New York 10022

For Defendants:    Gerald D. Grunsfeld, Esq.
                 Lazar Grunsfeld Elnadev LLP
                 1795 Coney Island Avenue
                 Brooklyn, New York 11230

SEYBERT, District Judge:

        On June 17, 2019, Plaintiff Lion-Aire Corp. (hereafter, "Lion-Aire" or "Plaintiff") commenced this trademark infringement action against Defendants Lion Aire Installation, Inc. (hereafter, "LAI"), Howard McCartharn (hereafter, "McCartharn"), and Chris Lambot (hereafter, "Lambot") (collectively, "Defendants") alleging: (1) trademark infringement, unfair competition, and false designation of origin pursuant to the Lanham Act, 15 U.S.C. § 1125(a); (2) use of deceptive acts or practices, pursuant to N.Y. General Business Law § 349; (3) common law trademark

infringement and unfair competition; and (4) trademark dilution and damage to business reputation pursuant to N.Y. General Business Law § 260-l.   (Compl., ECF No. 1, at 3-11.)   As its remedy, Plaintiff seeks, inter alia: (1) an order enjoining Defendants from using the "Lion Air Installations" or "Lion Air" name and mark, and any "confusingly similar" names and marks; and (2) money damages.   (Id. at 11-12.)   Defendants filed their Answer and Counterclaim on November 25, 2019, asserting two causes of action against Plaintiff: (1) cancellation of Lion-Aire's marks pursuant to  15 U.S.C. § 1119 and 15 U.S.C. § 1064(3); and (2) libel. (Answer, ECF No. 18.)   On September 14, 2020, Plaintiff filed an Amended Complaint, which added one additional claim for infringement of federally registered trademarks under the Latham Act.  (Am. Compl., ECF No. 40, at 3-8.)

Presently before the Court is Plaintiff's Motion for Summary Judgment (hereafter, "Plaintiff's Motion") (ECF No. 55),[1] and Defendants' Cross-Motion for Summary Judgment (hereafter, "Defendants' Motion") (ECF No. 69), each filed pursuant to Federal

---

[1] Plaintiff also filed three separate Motions to Amend (hereafter, "Amendment Motions"), seeking to amend the summary judgment record to include evidence of additional instances of "actual confusion" by customers.  (See ECF Nos. 85, 86, 88.)  Defendants opposed the first two Amendment Motions, arguing the Court should not consider the supplemental evidence as it would "uneven the playing field," and, should the Court consider such evidence, the Court should provide Defendants with 30 days to "examine the veracity of" the evidence.  (See ECF No. 87).  For the reasons discussed infra at note 6, the Court will consider such supplemental evidence.

Rule of Civil Procedure (hereafter, "Rule") 56.  Plaintiff argues it is entitled to summary judgment on its claims because the undisputed facts demonstrate Defendant committed trademark infringement under the Lanham Act, in particular: (1) Plaintiff has a valid mark entitled to protection; and (2) Defendants' actions are likely to cause confusion with Plaintiff's mark.  (Pl's Support Memo, ECF No. 63, at 8.)  Plaintiff further argues it is entitled to summary judgment dismissing Defendants' counterclaims, stating: (1) Defendants' trademark cancellation claims are unsupported because Plaintiff never abandoned its trademarks and continued to use its marks in commerce; and (2) Defendants cannot prevail on their libel claim because the alleged libelous statement is either true and/or a protected statement of opinion, and there is no proof such statement was made by Defendants or an agent thereof.[2]  (Id. at 27-31.)

Conversely, Defendants argue they are entitled to summary judgment because: (1) Plaintiff's marks should be cancelled because they were either, (a) obtained by fraud, or (b)

---

[2] The parties agree to dismissal of Defendants' counterclaim for libel.  (See Pl's Support Memo, ECF No. 63, at 30-31 (seeking summary judgement in favor of Plaintiff on Defendant's libel claim); Defs' Support Memo, ECF No. 74, at 29 (stating "Defendants hereby agree to discontinue the counter-claim against Plaintiff" which sought damages for libel, while erroneously referring to the counterclaim as a claim for "defamation".)  Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED insofar as it seeks dismissal of Defendants' counterclaim for libel.

abandoned, and therefore are not entitled to Lanham Act protection; (2) the "Lion Air Installations" mark is not confusingly similar to the "Lion-Aire" marks; and (3) Defendants' use of the "Lion Air Installations" mark is protected by the fair use doctrine. (Defs' Support Memo, ECF No. 74, at 5.)   Defendants further argue Defendant Lambot is not a proper party to this action.[3]  (Id.)

For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED insofar as it seeks dismissal of Defendants' counterclaims for trademark cancellation and libel and DENIED in all other respects.   Additionally, Defendants' Cross-Motion for Summary Judgment is GRANTED insofar as it seeks: (1) dismissal of Defendant Chris Lambot; and (2) to amend its Answer to add the affirmative defense of fair use; and is DENIED in all other respects.

---

[3] The parties have differing views as to the appropriate remedy for trademark infringement, namely, whether Plaintiff would be entitled to money damages should the Court find in Plaintiff's favor. (See Defs' Support Memo at 27-29; Pl's Opp'n, ECF No. 76, at 32.)  Because the Court concludes there are issues of fact precluding summary judgment as to Plaintiff's trademark infringement claims, the Court declines to address the issue of damages at this juncture.

BACKGROUND[4]

I.   The Parties

    A.   Lion-Aire Corp.

        Plaintiff Lion-Aire is a New York corporation with its

principal place of business in Dix Hills, New York.  (Pl's 56.1

---

[4] The following facts are taken from Plaintiff's Local Rule 56.1
Statement (hereafter, "Pl's 56.1 Stmt.") (ECF No. 62); Defendants'
Rule 56.1 Counterstatement (hereafter, "Defs' 56.1 Counterstmt.")
(ECF No. 72); Defendant's Rule 56.1 Statement (hereafter, "Defs'
56.1 Stmt.") (ECF No. 73); Plaintiff's Rule 56.1 Counterstatement
(hereafter, "Pl's 56.1 Counterstmt.") (ECF No. 79) and the
declarations and exhibits submitted relative to the instant
Motions.

Unless otherwise noted, a standalone citation to a party's Rule
56.1 statement throughout this Order means the Court has deemed
the underlying factual assertion undisputed.  Any citation to a
Rule 56.1 statement incorporates by reference the documents cited
therein.  Where relevant, however, the Court may also cite directly
to an underlying document.  The Court has deemed true undisputed
facts averred in a party's Rule 56.1 statement to which the
opposing party cites no admissible evidence in rebuttal.  See
Steward v. Fashion Inst. of Tech., No. 18-CV-12297, 2020 WL
6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("[P]ursuant to Local Civil
Rule 56.1 [the movant's] statements are deemed to be admitted where
[the non-moving party] has failed to specifically controvert them
with citations to the record." (quoting Knight v. N.Y.C. Hous.
Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2,
2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012
WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1
requires . . . that disputed facts be specifically controverted by
admissible evidence.  Mere denial of an opposing party's statement
or denial by general reference to an exhibit or affidavit does not
specifically controvert anything.").  "Additionally, to the extent
[a party's] 56.1 statement 'improperly interjects arguments and/or
immaterial facts in response to facts asserted by [the opposing
party] without specifically controverting those facts,' the Court
has disregarded [such] statement[s]."  McFarlance v. Harry's
Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1
(E.D.N.Y. Apr. 2, 2020).

Stmt. ¶1.)   Lion-Aire was founded in 1992 for the purpose of providing air conditioning installation services to consumers in the New York Metropolitan and tri-state areas.  (Id. at ¶2.)  Such services include the installation of Packaged Terminal Air Conditioning ("PTAC"), Fan Coil ("FC"), Water Source Heat Pump ("WSHP") and Mini-Split ("MS") items (collectively, "HVAC Services").  (Id.)

   B.   Lion-Aire Corp.'s Marks

        From at least 1992 to 2016, Lion-Aire used several marks, including the service mark "LION-AIRE", the trade name "Lion-Aire Corp." and the Lion-Aire Heating & Cooling logo, depicted below (collectively, the "Lion-Aire marks").



(Pl's 56.1 Stmt. ¶¶3-4.)  At least as early as October 2016, Lion-Aire began informing customers that it, along with two other companies, became a part of Lion Enterprises.  (Pl's 56.1 Counterstmt. ¶15.)  Lion Enterprises is the parent company of Lion-Aire.  (Id. ¶¶7, 15.)

        Upon the reorganization of Lion-Aire as a "child" company to Lion Enterprises, Lion-Aire made changes to its branding and marketing.  For example, at or after 2015, Lion-Aire re-branded its company vans to bear the Lion Enterprises mark as opposed to

the Lion-Aire marks.  (Prutzman Decl. Ex. F, ECF No. 56-6, at 21.)
At or around the same time, Lion-Aire began depositing checks
received into a Lion Enterprises bank account as opposed to the
Lion-Aire bank account used previously.  (Id. at 19-20.)   By
October 2016, Lion-Aire updated its website to reflect the changes
in corporate structure.   The website stated, in pertinent part,
"Lion Enterprises is the proud parent company of three leaders in
the HVAC market: Accutemp, Lion-Aire, and Spectrum. Together our
business units specialize in the service, repair and replacement
of PTAC units and thru-wall equipment."  (Grunsfeld Decl. Ex. A,
ECF No. 70-1.)   Notwithstanding these branding changes and the
company reorganization, Lion-Aire continued to market itself as an
independent HVAC service provider within the Lion Enterprises
"family."  (See, e.g., Liontos Decl. Exs. W, ECF No. 57-5 (business
cards showing Lion-Aire being marketed under its parent company,
Lion Enterprises); X, ECF No. 57-6 (advertisements from Spring
2016 to Spring 2019 showing Lion-Aire being marketed under its
parent company, Lion Enterprises); Y, ECF No. 57-7 (sample work
order from January 2018 displaying Lion-Aire's name and logo under
the Lion Enterprises mark).)

        In April 2019, John Liontos, President of Lion-Aire,
filed an application with the United States Patent and Trademark
Office ("USPTO") seeking trademark protection for the "Lion-Aire"
marks in connection with use in "providing HVAC contractor

services".   (Liontos Decl. Ex. U, ECF No. 57-3.)   In the application, Liontos signed a declaration stating, <u>inter alia</u>, the Lion-Aire "mark is in use in commerce on or in connection with the goods/services in the application."   (<u>Id.</u>)   In October 2019, the USPTO issued United States Trademark Registrations for the Lion-Aire marks.   (Pl's 56.1 Stmt. ¶¶6-7.)

    C.   <u>Lion Air Installation, Inc. ("LAI")</u>[5]

       Defendant LAI is a New York Corporation with its principal place of business in Middle Island, New York.   (Pl's 56.1 Stmt. ¶15.)   In 2017, LAI began offering HVAC contracting services, specifically, fan coil installation services, to customers in the tri-state area.   (<u>Id.</u> at ¶16.)   LAI used and continues to use the term "Lion Air Installations" and the logo depicted below to promote its services.



(Defs' Rule 56.1 Counterstmt. ¶16.)   LAI does not have a state or federally registered trademark for the term "Lion Air Installations" or the above logo; nor has LAI sought or received

---

[5] The Court notes the parties refer to the Defendant company as both "Lion Air Installation" (singular) and "Lion Air Installations" (plural).   For the avoidance of doubt, all references herein to "Lion Air Installation", "Lion Air Installations", or "LAI", shall be deemed a reference to the Defendant company.

permission from Plaintiff to use the term or logo. (Id. at ¶17; ¶31.)

     D.   <u>Howard McCartharn</u>

        Defendant Howard McCartharn ("McCartharn") is the President of LAI. (Pl's 56.1 Stmt. ¶18.) As president, McCartharn is empowered to select LAI's trademarks, internet domain names, and other marketing-related materials, if any. (Id.) MCartharn owns and uses the domain name lionairinstallations.com in connection with offering HVAC services via LAI. (Id. ¶19.)

     E.   <u>Chris Lambot</u>

        Defendant Chris Lambot ("Lambot") is and has been an employee of LAI since 2017. (Id. ¶20.) Lambot is LAI's salesman responsible for customer relations. (Id.) As an employee, Lambot does not have any ownership interest in LAI. (Defs' 56.1 Stmt. ¶50.)

II.  <u>Events Giving Rise to the Instant Lawsuit</u>

        In November 2018, Lion-Aire received an email from an individual named Mark Gaspire which threatened to report Lion-Aire to the State of New York because "an employee by the name of 'Howard' smelled like alcohol on the job." (Pl's 56.1 Stmt. ¶27.) Knowing that there were no employees at Lion-Aire named Howard, Plaintiff assumed the email was received in error. (Id. ¶28.) In February 2019, Lion-Aire received an "offensive email through its

contact portal" from a person named Howard McCartharn.  (Id. ¶26.) The email accused Lion-Aire of stealing fan coil business from him.  (Id.)

Because both the November 2018 and February 2019 emails involved the same person named "Howard," Plaintiff began investigating the issue to determine if the emails were related. (Id. ¶28.)  Plaintiff was informed that Howard McCartharn worked for a company named Filtrite Fan Coil Installation and Parts ("Filtrite").  (Id. at ¶29.)  Plaintiff then reached out to Filtrite's owner, Perry Treister ("Treister").  (Id. ¶30.) Treister informed Lion-Aire that Howard McCartharn formerly worked for Filtrite as an independent contractor.  (Id.)  Treister further stated McCartharn and Lambot started their own company called Lion Air Installations.  (Id.)  It was at this time that Lion-Aire became aware that Defendants were offering HVAC services in the tri-state area under the name Lion Air Installations.  (Id.) Plaintiff commenced this lawsuit thereafter in June 2019.  (Compl.)

ANALYSIS

I.  Legal Standards

    A. Summary Judgment

        The Court shall grant summary judgment under Rule 56(a) if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is material for the purposes

of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden of persuasion may be satisfied by either: (1) submitting evidence that negates an essential element of the non-moving party's claim; or (2) by demonstrating the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. Id. Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts and instead offer some hard evidence showing that its version of events is not wholly fanciful." Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citations and quotation marks omitted). In reviewing the record,

the Court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge.  Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)).  Accordingly, where an issue as to a material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper.  Id.

Finally, "[w]hen faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other."  Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Id.

B. Trademark Cancellation

Under the Lanham Act, "any person who believes that he is or will be damaged" may file "a petition to cancel a registration of a mark" where the mark "has been abandoned, or its registration was obtained fraudulently."  15 U.S.C. § 1064(3). Where appropriate, a district court may "order the cancelation of [such] registrations."  15 U.S.C. § 1119.

i. Cancellation Based Upon Fraud

"Fraud in procuring a trademark registration occurs . . . when an applicant knowingly makes false, material representations of fact in connection with his application." MPC Franchise, LLC v. Tarntino, 826 F.3d 653, 658 (2d Cir. 2016) (quoting In re Bose Corp., 580 F.3d 1240, 1243 (Fed. Cir. 2009) (alterations in original) (further citations omitted)). A party seeking cancellation of a trademark on the basis of fraud must "demonstrate the alleged fraud by 'clear and convincing evidence'". Orient Exp. Trading Co. v. Federated Dep't Stores, Inc., 842 F.2d 650, 653 (2d Cir. 1988). Indeed, "[w]hen the allegation of fraud centers on a trademark applicant's signed oath, the charging party bears an especially high burden" and "the Court has 'no room for speculation, inference or surmise and obviously, any doubt must be resolved against the charging party.'" Haggar Int'l Corp. v. United Co. for Food Indus. Corp., 906 F. Supp. 2d 96, 107 (E.D.N.Y. 2012) (quoting Bose, 580 F.3d at 1243).

Moreover, to adequately prove it is entitled to trademark cancelation due to fraud, the party seeking cancellation must show the statements made to the USPTO were "knowing misstatement[s] of material fact that indicate a deliberate attempt to mislead" the USPTO. MPC Franchise, 826 F.3d at 660 (alteration in original). Thus, mere evidence that an applicant "should have known" or "had to have known" statements it made to

13

the USPTO were false is insufficient to prove "a trademark holder fraudulently obtained [the] trademark." Id. (stating, to cancel a trademark, "the allegedly fraudulent statements [in the application] may not be the product of mere error or inadvertence"); see also A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC, 241 F. Supp. 3d 461, 480 (S.D.N.Y. 2017) ("[A] party claiming that a trademark was procured by fraud must establish that the registrant acted 'with intent to deceive' and made 'a misstatement of a material fact,' i.e., a fact 'that would have affected the [USPTO's] action on the application[ ]' in question.").

　　　　ii.  Cancellation Based Upon Abandonment

　　　　If a trademark owner "ceases to use [said] mark without an intent to resume use in the reasonably foreseeable future, the mark is said to have been 'abandoned'." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 147 (2d Cir. 2007).  "The party asserting abandonment bears the burden of persuasion with respect to two facts: (1) non-use of the mark by the legal owner; and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future." Id. (citing 15 U.S.C. § 1127, and Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850 (2d Cir. 1992) (further citations omitted).)

　　　　Non-use of a mark for three consecutive years "shall be prima facie evidence of abandonment." 15 U.S.C. § 1127 ("'Use' of

14

a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in the mark"). Such presumption "eliminates the challenger's burden to establish the intent element of abandonment as an initial part of its case." Emmpresa Cubana Del Tabaco v. Culbro Corp., 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002) (citing Imperial Tobacco Ltd. v. Phillip Morris, Inc., 899 F.2d 1575, 1579 (Fed. Cir. 1990) (further citations omitted).) However, in the absence of evidence of non-use of the mark for three consecutive years, the party seeking trademark cancellation must meet the burden of persuasion on both elements. See ITC Ltd., 482 F.3d at 147; see also Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1355 (E.D.N.Y. 1994) ("Abandonment being in the nature of a forfeiture, must be strictly prov[en].").

The Second Circuit interprets the phrase "intent not to resume" as the "intent not to resume use [of the trademark] within the reasonably foreseeable future." Silverman v. CBS Inc., 870 F.2d 40, 46 (2d Cir. 1989). The Circuit Court has long recognized "intent is always a subjective matter of inference and thus rarely amenable to summary judgment." ITC Ltd., 482 F.3d at 150. When the "product" being offered to consumers is a service, as opposed to a good, the Lanham Act defines "use in commerce" as being "used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127; see also N.

15

Star IP Holdings, LLC v. Icon Trade Servs., LLC, No. 22-CV-7324, 2024 WL 36978, at *14 (S.D.N.Y. Jan. 3, 2024) ("In determining whether the plaintiffs have satisfied the 'use in commerce' requirement, we ask whether the trademark has been displayed to customers in connection with a commercial transaction." (internal quotation marks and alterations omitted)).

### C. Trademark Infringement

> To successfully allege a trademark infringement claim, a plaintiff must establish that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale. . . or advertising of goods or services,' (5) without the plaintiff's consent."

Canon U.S.A., Inc. v. F & E Trading LLC, No. 15-CV-6015, 2017 WL 4357339, at *5 (E.D.N.Y. Sept. 29, 2017) (quoting 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406 (2d Cir. 2005)).   In addition to proving the protectability of the mark in accordance with the above:

> the plaintiff must show that defendant's use of that mark "is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]."

Id. (quoting 1-800 Contacts, 414 F.3d at 406 (alterations in original)).   Confusion must be proven by "probability . . . not a mere possibility" which would affect "numerous ordinary prudent

16

purchasers." Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 383 (2d Cir. 2005) (citations omitted).

To determine whether there is a likelihood of customer confusion, courts apply an eight-factor test proscribed by the Second Circuit in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961). Star Indust., 412 F.3d at 383.

> The factors are: "(1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap" ...; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers." [(hereafter, the "Polaroid Factors")]

State St. Glob. Advisors Tr. Co. v. Visbal, 677 F. Supp. 3d 209, 267 (S.D.N.Y. 2023) (citing Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d 384, 391 (2d Cir. 1995) (further citations omitted)), adhered to on reconsideration, No. 1:19-CV-1719, 2023 WL 4764021 (S.D.N.Y. July 25, 2023). In considering the Polaroid factors, the Court must engage in a fact-intensive inquiry, and accordingly "disputes between parties as to trade-mark validity and infringement can rarely be determined satisfactorily on a motion for summary judgment." Id. (citing Gutherie Healthcare Sys. v. ContextMedia, Inc., No. 12-CV-7992, 2014 WL 185222, at *9 (S.D.N.Y. Jan. 16, 2014) (further citations omitted)).

17

Although summary judgment may be granted in trademark infringement cases "in certain circumstances," if a court must draw a factual inference with regard to any of the <u>Polaroid</u> Factors, and if a "reasonable trier of fact could reach a different conclusion, the district court may not resolve that issue on summary judgment." <u>Cheddar Bob's Inc. v. Macsnmelts Mgmt. Co., LLC</u>, No. 16-CV-1331, 2020 WL 1323018, at *7 (E.D.N.Y. Jan. 14, 2020); <u>see also</u> <u>Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L.</u>, No. 05-CV-2851, 2008 WL 905892, at *36 (E.D.N.Y. Mar. 31, 2008) ("Summary judgment may be granted 'where the undisputed evidence would lead only to one conclusion as to whether confusion is likely.'").

II.   <u>Discussion</u>

    A. <u>Cancellation Claims</u>

        i. <u>Cancellation Based Upon Fraud</u>

Defendants assert Plaintiff's marks should be cancelled because they were obtained by fraud.  (Defs' Support Memo at 6.) In particular, Defendants assert Plaintiff fraudulently misrepresented to the USPTO that "it was using the marks in commerce, notwithstanding that it had not used the marks in commerce for several years." (<u>Id.</u>)  Defendants contend Plaintiff's application was fraudulent because "[a]t least as early as October 7, 2015, Plaintiff had switched from marketing its HVAC services under the [Lion-Aire] mark to marketing its services under the

[Lion Enterprises] mark" and, therefore, the Lion-Aire mark was not being used in commerce at the time of the application. (Id.) In support of this claim, Defendants submit: (1) a screenshot of Plaintiff's website dated October 7, 2016, which states "Lion Enterprises is the proud parent company of three leaders in the HVAC market: Accutemp, Lion-Aire, and Spectrum" (Grunsfeld Decl. Ex. A); (2) there were only "miniscule references" to Lion-Aire marks on Plaintiff's website at or around the time of the filing of the trademark application (Defs' Support Memo at 7); (3) testimony from a Lion-Aire representative stating in 2015 Lion-Aire changed the marking on its company vans to state "Lion Enterprises" in lieu of "Lion-Aire" (Prutzman Decl. Ex. F at 21); and (4) testimony from that same representative that in 2015 Lion Aire checks started being deposited into the Lion Enterprises account (Id. at 19-20; Defs' Support Memo at 7-8).

In opposition, Plaintiff argues "Defendants have not offered any evidence, let alone clear and convincing evidence" to support their claim that the trademarks at issue were obtained via fraud because "the record clearly shows that even after Lion Enterprises was established Plaintiff continued to use the Lion-Aire trademark and logo in commerce at all relevant times." (Pls' Opp'n, ECF No. 76, at 24-25 (emphasis in original).) Plaintiff further avers the "undisputed evidence in the record contradicts Defendants' contentions" that it was no longer using

its marks in commerce at the time of filing its trademark application, because, inter alia: (1) Plaintiff's representative testified it currently uses Lion-Aire marks on business cards, statements, advertising, mailings, and Google advertisements (Prutzman Decl., Ex. F at 40-41, 98); (2) Plaintiff's advertisements, including those dated from March 2016 to March 2019, show Plaintiff marketed its services using the Lion-Aire mark and logo (Liontos Decl. Ex. X, ECF No. 57-6); (3) Lion-Aire work orders from the same time period bear the Lion-Aire mark and logo (Liontos Decl. Ex. Y, ECF No. 57-7).

The Court agrees with Plaintiff. At best, Defendants established Plaintiff re-organized its company beginning in October 2016 whereby it began advertising Lion-Aire in conjunction with, and under the umbrella organization, Lion Enterprises. (See Grunsfeld Decl. Ex. A; Prutzman Decl. Ex. F, ECF No. 56-6, at 21.) Defendants failed to establish, and indeed cannot establish on this record, Plaintiff intended to deceive or mislead the USPTO in its trademark application. See MPC Franchise, 826 F.3d at 660. In its trademark application, Plaintiff submitted to the USPTO the very screenshot of its website that Defendants contend proves Plaintiff's application was fraudulent. (Liontos Decl. Ex. U. at 8.) It is incomprehensible to the Court, and would be incomprehensible to a jury, that a plaintiff could "knowingly mislead" the USPTO about whether it was using its marks in commerce

while simultaneously disclosing to the USPTO the precise manner in which it was using its marks in commerce.  MPC Franchise, 826 F.3d at 660.  Even if its website expressed Plaintiff's intent to no longer use the Lion-Aire marks in commerce, which it patently did not, that fact would have been disclosed to the USPTO via the submission of the screenshot of the website.  Thus, there was no misstatement of fact "that would have affected the [USPTO's] action on the application in question." A.V.E.L.A., 241 F. Supp. 3d at 480.

Accordingly, Plaintiff's Motion for Summary Judgment as to Defendants' counterclaim for cancellation based upon fraud is GRANTED.  Correspondingly, and for the same reasons, Defendants' Cross-Motion for Summary Judgment as to this claim is DENIED.

ii. Cancellation Based Upon Abandonment

Defendants also seek cancellation of Plaintiff's Lion-Aire marks on the ground that Plaintiff abandoned them. (Defs' Support Memo at 10-11.)  Defendants argue Plaintiff abandoned its Lion-Aire marks for its Lion Enterprises mark beginning in October 2016.  (Id.)  In support of this claim, Defendants rely upon evidence substantially similar to the evidence submitted to prove the Lion-Aire marks were obtained by fraud, in particular: (1) a screenshot of Plaintiff's website dated October 7, 2016, which states "Lion Enterprises is the proud parent

21

company of three leaders in the HVAC market: Accutemp, Lion-Aire, and Spectrum" (Grunsfeld Decl. Ex. A); (2) testimony from a Lion-Aire representative stating that, in 2015, Lion-Aire changed the marking on its company vans to state "Lion Enterprises" in lieu of "Lion-Aire" (Prutzman Decl. Ex. F at 21); (3) testimony from that same representative that, in 2015, Lion-Aire checks began being deposited into the Lion Enterprises account (Id. at 19-20; Defs' Support Memo at 7-8); and (4) Lion-Aire has less online reviews than Lion Enterprises and the Lion-Aire business page is "not claimed" by Plaintiff. (Defs' Support Memo at 11-12.) Defendants also submit, notwithstanding the evidence submitted by Plaintiff of its use of the Lion-Aire marks in advertisements, on business cards, and on work orders from the year 2016 and thereafter, the Court should not consider such evidence because the "use of a mark in a website does not constitute use in commerce" and "Plaintiff does not provide any evidence, or even attest" that such advertisements, business cards, and work orders were used in commerce. (Id. at 13.)

In contrast, Plaintiff argues the record is replete with evidence that it did not abandon its marks. (Pl's Opp'n at 22.) Plaintiff again points to evidence establishing its continued use of the Lion-Aire marks, including: (1)testimony from Plaintiff's representative that Plaintiff currently uses Lion-Aire marks on business cards, statements, advertising, mailings, and in Google

advertisements (Prutzman Decl., Ex. F at 40-41, 98);
(2) Plaintiff's advertisements, including those dated from March
2016 to March 2019, which show Plaintiff marketed its services
using the Lion-Aire mark and logo (Liontos Decl. Ex. X); and
(3) Lion-Aire work orders from the same time period bearing the
Lion-Aire mark and logo (Liontos Decl. Ex. Y).

On record, the Court finds no reasonable jury could find
in favor of Defendants on the issue of abandonment. To cancel a
trademark on the basis of abandonment, the party seeking
cancellation must prove, by clear and convincing evidence: "(1)
non-use of the mark by the legal owner; and (2) lack of intent by
that owner to resume use of the mark in the reasonably foreseeable
future." ITC Ltd., 482 F.3d at 147. As discussed supra, the
Second Circuit has long recognized "intent is always a subjective
matter of inference and thus rarely amendable to summary judgment."
Id. at 157. However, where, as here, Defendants cannot prove non-
use of Plaintiff's marks by clear and convincing evidence, summary
judgment in favor of Plaintiff is appropriate.

The Court examines the pertinent evidence below. First,
as stated supra, Part II.A.i., screenshots provided of Plaintiff's
website do not show abandonment of the Lion-Aire marks. Rather,
the website merely informs consumers Lion-Aire, along with two
other companies, became a part of "Lion Enterprises." (Grunsfeld
Decl., Ex. A.) Second, Plaintiff has submitted ample

23

uncontroverted evidence indicating it did not abandon its Lion-Aire marks, namely: (1) Plaintiff's advertisements, including those dated from March 2016 to March 2019, which advertise Plaintiff's HVAC services using the Lion-Aire mark and logo (Liontos Decl. Ex. X); (2) work orders bearing the Lion-Aire mark and logo (Liontos Decl. Ex. Y); and (3) testimony from Plaintiff's representative that it currently uses Lion-Aire marks on business cards, statements, advertising (including internet advertising), and mailings. (Prutzman Decl. Ex. F at 40-41, 98.) Such patent evidence of the use of Lion-Aire marks cannot be genuinely disputed; thus, Defendants fail to create a genuine issue of material fact as to Plaintiff's purported non-use of the Lion-Aire mark.

Because Defendants cannot prove by clear and convincing evidence Plaintiff's non-use of its Lion-Aire marks, Defendants' claim for trademark cancellation based upon abandonment must fail. Accordingly, Plaintiff's Motion for Summary Judgment as to Defendants' counterclaim for cancellation based upon abandonment is GRANTED. For the same reasons, Defendants' Cross-Motion for Summary Judgment as to this claim is DENIED.

B. <u>Trademark Infringement Claims</u>

    i. <u>Whether the Lion-Aire Marks Are Entitled to Protection</u>

To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove: "(1) its mark is entitled to protection"; and "(2) the defendant's use of its own mark will likely cause confusion with plaintiff's mark." <u>RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.</u>, 527 F. Supp. 3d 305, 316 (E.D.N.Y. 2021) (citing <u>Gruner + Jahr USA Publ'g v. Meredith Corp.</u>, 991 F.d 1072, 1074 (2d Cir. 1993)). "Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act . . . [and] trademark infringement under New York common law." <u>Van Praagh v. Gratton</u>, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014); see also <u>Capri Sun GmbH v. Am. Beverage Corp.</u>, 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022) (same).

> A certificate of registration with the [US]PTO is prima facie evidence that the mark is registered and valid (<u>i.e.</u>, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.

<u>Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.</u>, 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)). Such presumption may be overcome "if the allegedly infringing party demonstrates by a preponderance of the evidence that the mark is ineligible for

protection."  Khan v. Addy's BBQ LLC, 419 F. Supp. 3d 538, 552 (E.D.N.Y. 2019) (internal quotation marks omitted).

Here, it is undisputed Plaintiff's Lion-Aire marks are registered with the USPTO. (Liontos Decl. Exs. S, T, ECF Nos. 57-1, 57-2; see also Defs' Support Memo at 7 (conceding Plaintiff obtained trademark protection for its Lion-Aire marks notwithstanding Defendants' arguments that the marks should be cancelled); Defs' Opp'n, ECF No. 83, at 7 (same).)  Moreover, this Court has concluded, as a matter of law, Defendants cannot prove Plaintiff's marks should be cancelled.  (See supra Part II.A.) Accordingly, and in the absence of any additional arguments concerning the validity of Plaintiff's Lion-Aire marks, the Court concludes the Lion-Aire marks are valid and entitled to protection.

### ii. Whether the Lion-Aire Marks Are Likely to be Confused with the LAI Mark

Having found Plaintiff to have a legally protectable interest in the Lion-Aire marks, the Court now turns to "the key element a plaintiff must prove under 15 U.S.C. § 1114(a) in order to succeed on a trademark infringement suit, that is, [whether] there is a likelihood of confusion."  Gruner + Jahr USA Pub., 991 F.2d at 1077; see also Gutherie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016) (describing likelihood of confusion as turning upon "whether ordinary consumers are likely to be misled or confused as to the source of the product [or

service] in question because of the entrance in the marketplace of the junior user's mark" (internal quotation marks and alterations omitted)).

As previously stated, to determine whether there is a likelihood of confusion, courts analyze the eight <u>Polaroid</u> Factors, namely:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

<u>Star Indus.</u>, 412 F.3d at 384.  Where a plaintiff's mark is "registered and entitled to protection . . . the factors that have the greatest pertinence are the degree of similarity between the two marks, and the proximity of [d]efendant's area of commerce to [p]laintiff's."  <u>Guthrie Healthcare Sys.</u>, 826 F.3d 27 at 38.

The question of whether there is a likelihood of confusion is "usually reserved for a jury, as it requires a fact intensive examination of the probable reactions of prospective purchasers of the parties' goods."  <u>Capri Sun</u>, 595 F. Supp. 3d at 149 (denying parties' cross-motions for summary judgment as to trademark infringement claims because "neither party ha[d] solidly

established that, viewed in totality, 'the undisputed evidence . . . lead[s] only to one conclusion as to whether confusion is likely.'"); see also Star Indus., 412 F.3d at 384 ("The district court's resolution of each separate [Polaroid] [F]actor is treated as a finding of fact which we review for clear error, while its balancing of the factors is treated as a matter of law subject to de novo review.").

For the reasons set forth below, the Court finds a genuine issue of material fact exists as to the likelihood of confusion element of Plaintiff's trademark infringement claims. Accordingly, the parties Cross-Motions for Summary Judgment as to the trademark infringement claims are DENIED.

1. Analysis of the *Polaroid* Factors

a. Strength of the Lion-Aire Marks

When analyzing the strength of a mark, courts consider the mark's "tendency to uniquely identify the source of the product." Star Indus., 412 F.3d at 384. This determination requires courts to consider "both the mark's inherent distinctiveness, based on the characteristics of the mark itself, and its acquired distinctiveness, based on associations the mark has gained through use in commerce." Akiro LLC v. House of Cheatham, Inc., 946 F. Supp. 2d 324, 333 (S.D.N.Y. 2013). Courts measure a mark's inherent distinctiveness using "four categories

28

of graduating increasing protection accorded to trademarks."
Guthrie Healthcare Sys., 826 F.3d 27 at 41; see also Abercrombie
& Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976);
Akiro LLC, 946 F. Supp. 2d at 333. Under this classification
framework, "[m]arks are classified, in ascending order of
strength, as[:] (1) generic; (2) descriptive; (3) suggestive; or
(4) arbitrary or fanciful." Star Indus. Inc., 412 F.3d a 384-85
(internal quotation marks and alterations omitted).

The Second Circuit provides descriptions for each
classification category:

> Descriptive marks are those consisting of
> words identifying qualities of the product.
> They are not inherently distinctive, but are
> protectable provided they have acquired
> secondary meaning, which we sometimes refer to
> as "acquired distinctiveness." Suggestive
> marks and arbitrary or fanciful marks are each
> inherently distinctive. Suggestive marks are
> those that are not directly descriptive, but
> do suggest a quality or qualities of the
> product, through the use of "imagination,
> thought and perception[.]" Arbitrary or
> fanciful marks are ones that do not
> communicate any information about the product
> either directly or by suggestion.
>
> Among marks relying solely on inherent
> distinctiveness for their protectability,
> arbitrary or fanciful ones are the strongest.
> In the absence of any showing of secondary
> meaning, suggestive marks are at best
> moderately strong.

Star Indus., Inc., 412 F.3d at 385 (internal citations omitted).
"Importantly, [r]egistration by the [US]PTO without proof of

secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." Akiro LLC, 946 F. Supp. 2d at 333.

Plaintiff argues its Lion-Aire marks are "arbitrary or fanciful." (Pl's Support Memo at 16.) In support of this argument, Plaintiff asserts the Lion-Aire marks "have acquired strong marketplace distinctiveness through nearly three decades of continuous use, sales in excess of $55 million since 1992, and advertising expenditures of $313,148 since 2014 alone" (id.) (emphasis in original). Plaintiff further maintains that "the dominant element of Plaintiff's marks" – the "Lion" – "describes nothing about HVAC services" and, therefore, the marks are entitled to the arbitrary or fanciful strength classification. (Pl's Opp'n at 11.)

In contrast, Defendants argue Lion-Aire's marks are weak because the "Aire" portion of the Lion-Aire marks is "descriptive of the mark." (Defs' Support Memo at 15.) That is, the word "Aire" is associated with the provision of HVAC services. (Id.) Defendants further contend the existence of two other HVAC companies, Lion Art Cool and Lion HVAC, undermines Plaintiff's claim that its marks are strong because their existence proves "there is no one particular company in New York using the name Lion that is uniquely associated with HVAC services." (Id.) Plaintiff counters, stating the two companies referred to by

Defendants are either suppliers of HVAC equipment, and thus are not competitors with Plaintiff, or have a "virtually non-existent" online presence.  (Pl's Op'n at 11.)

It is undisputed Plaintiff's Lion-Aire marks were registered without proof of secondary meaning.  (See Liontos Decl. Exs. S, T.)  Accordingly, Plaintiff is entitled to a "presumption that the mark is more than merely descriptive and thus, that the mark is inherently distinctive."  Akiro LLC, 946 F. Supp. 2d at 333.  While the existence of other companies with names similar to Lion-Aire could potentially weaken the strength of Lion-Aire's mark under certain circumstances, mere evidence of the existence of other marks "without any evidence to support the claim that plaintiff's trademark was weakened by the uses of similar marks by third parties" is insufficient to prove that a registered trademark is weak.  Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC, 335 F. Supp. 3d 566, 583 (S.D.N.Y. 2018); see also Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.), 544 F.2d 1167, 1174 (2d Cir. 1976). Moreover, contrary to Defendants' contentions, the name "Lion-Aire" does not "communicate any information about the product either directly or by suggestion," thus making the mark arbitrary or fanciful and indicating the Lion-Aire mark is strong.  Star Indus., Inc., 412 F.3d at 385.  Accordingly, the Court finds the Lion-Aire marks to be sufficiently strong such that this factor weighs in Plaintiff's favor.

31

b. <u>Similarity of the Lion-Aire Marks and the LAI Mark</u>

In assessing the degree of similarity between marks, courts "must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and 'the totality of factors that could cause confusion among prospective purchasers.'" <u>Hypnotic Hats, Ltd.</u>, 335 F. Supp. 3d at 584 (citing <u>Malletier v. Burlington Coat Factory Warehouse Corp.</u>, 426 F.3d 532, 537 (2d Cir. 2015)); <u>see also</u> <u>Arrow Fastener Co. v. Stanley Works</u>, 59 F.3d 384, 394 (2d Cir. 1995) ("[C]ourts are to consider 'all factors that could reasonably be expected to be perceived by and remembered by potential purchasers'"). "The Second Circuit has instructed courts to compare the marks in their entirety" as opposed to parsing out fragments of each mark "because juxtaposing fragments of each mark [or dress] does not demonstrate whether the marks as a whole are confusingly similar." <u>LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.</u>, 209 F. Supp. 3d 612, 669 (S.D.N.Y. 2016), <u>aff'd sub nom.</u> <u>LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA</u>, 720 F. App'x 24 (2d Cir. 2017) (internal quotation marks and citations omitted) (alteration in original).

Plaintiff's Lion-Aire marks are "strikingly similar" to the marks employed by Defendant, "possessing a strong visual and phonetic resemblance," and are "almost identically named." <u>RVC Floor Decor</u>, 527 F. Supp. 3d at 323. Indeed, the name "Lion-Aire

32

Corp." and the "Lion-Aire Heating & Cooling" logo, bearing a head-on image of a lion's head, strongly resembles the name "Lion Air Installations" with a logo bearing a side-profile image of a lion's head.  This resemblance both in name and imagery favors Plaintiff.

                         c. <u>Competitive Proximity of the Services<br>and Bridging the Gap</u>

In determining whether two companies are in competitive proximity of one another, courts "consider whether the two products compete with each other."  <u>The Sports Auth., Inc. v. Prime Hosp. Corp.</u>, 89 F.3d 955, 963 (2d Cir. 1996) (citations omitted).  Such competition is measured "in terms of 'the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate.'"  <u>Cheddar Bob's</u>, 2020 WL 1323018, at *9 (citing <u>Guthrie Healthcare Sys.</u>, 826 F.3d at 39); <u>see also</u> <u>Lemme v. Nat'l Broad. Co.</u>, 472 F. Supp. 2d 433, 448–49 (E.D.N.Y. 2007) ("The competitive proximity factor has two elements, market proximity and geographic proximity. Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products.") (citation omitted).  The policy underlying a court's consideration of geographic proximity is based upon the notion that consumers are more likely to infer relatedness of two companies with similar marks where the companies exist in the same geographic area.  <u>Cheddar Bob's Inc.</u>, 2020 WL 1323018, at *9 (finding geographic

proximity factor weighed against a finding of likelihood of confusion where parties' businesses were a substantial distance away from each other).  Moreover, the "bridging the gap" factor "looks to either the likelihood that [plaintiff] will enter [defendant's] business or the average customer's perception of the likelihood that the plaintiff would enter defendant's market." The Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d 955, 963 (2d Cir. 1996) (concluding bridging the gap factor weighed in favor of defendant where plaintiff admitted it "presently ha[d] no plans to enter" the type of business held by defendant, nor had it provided any evidence of its plans to do so).

Here, the parties each admit they: (1) offer HVAC installation services; and (2) operate in the same geographic location, i.e., the New York tri-state area.  (Defs' 56.1 Counterstmt. ¶¶2, 4, 16.)  The parties disagree, however, as to whether they offer the same type of HVAC services such that they compete with one another.

Plaintiff asserts, because Defendants offer HVAC services in the tri-state area, as does Plaintiff, the Court's analysis as to this factor should end there, since the parties are competitors. (Pl's Support Memo at 19.)  In opposition, Defendants argue not all HVAC services are the same.  In particular, Defendants contend the parties are not competitors because

34

"Defendants only install one type of system known as a fan coil unit", which can only be accommodated in certain types of buildings that are "set up with a fan coil unit system", and Plaintiffs do not "perform any fan coil work." (Defs' Support Memo at 16.) In support of their argument, Defendants submit a declaration from LAI's owner and named Defendant, Howard McCartharn, which states, "to the best of [McCartharn's] knowledge", Plaintiff "does not install fan coil units, or if it does, its business in this area is negligible." (McCartharn Decl., ECF No. 71, at ¶15.) McCartharn also declares LAI "has an incredibly narrow focus" and "only install[s] . . . fan coil units," and, therefore, Plaintiff and Defendants are not market competitors. (Id.; see also Defs' Support Memo at 16.) In further support of LAI's contention it does not compete with Plaintiff, Defendants: (1) submit testimony from non-party Perry Treister, who testified that Plaintiff "does mostly PTAC units" and "90 percent of [Plaintiff's business] is PTAC", (Prutzman Decl. Ex. I, ECF No. 56-9, at 8); and (2) assert Plaintiff did not provide documents responsive to Defendants' request for "all invoices pertaining to fan coil units from 2017-2020." (Defs' Support Memo at 16.)

Plaintiff challenges Defendants' evidence, arguing, inter alia: (1) Treister's testimony indicates the parties are competitors for at least 10 percent of their total business

35

represented by fan coil installations; (2) Plaintiff's representative testified Plaintiff "installs all brands of fan coil units" and fan coil installations are "approximately 20-50% of his business", (see Pl's Opp. at 13; Prutzman Decl. Ex. F at 26-27; 31); and (3) images of Plaintiff's truck, submitted by Defendants, show Plaintiff offers fan coil services. (Grunsfeld Decl. Ex. C, ECF No. 70-3; Pl's Opp'n at 13-14.)

It is clear, based upon the parties' admissions, Plaintiff and Defendants operate in the same geographic market. (Defs' 56.1 Counterstmt. ¶¶2, 4, 16.) What is less clear, however, is whether, and to what extent: (1) the parties are in "related areas of commerce"; (2) Plaintiff has already "bridged the gap" by offering and providing fan coil services; and (3) a customer would perceive Plaintiff as offering fan coil services. See Cheddar Bob's Inc., 2020 WL 1323018, at *9; Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 482 (2d Cir. 1996) (concluding summary judgment was inappropriate where "the assumptions of the typical customer" were not taken into account in the bridging the gap analysis and where "it [was] surely plausible" plaintiff could enter defendant's market). In light of the evidence provided, the Court finds a reasonable jury could conclude the competitive proximity and bridging the gap factors either weigh in favor of Plaintiff or are neutral.

### d. Actual Confusion

"For the purposes of the Lanham Act, actual confusion means 'consumer confusion that enables a seller to pass off his goods as the goods of another.'" Aztar Corp. v. NY Ent., LLC, 15 F. Supp. 2d 252, 259 (E.D.N.Y. 1998), aff'd sub nom., Collins v. Aztar Corp., 210 F.3d 354 (2d Cir. 2000) (citing Sports Authority, 89 F.3d at 963). To prove actual confusion, however, a party must show the confusion affects "the purchasing and selling of goods or services." Lang v. Ret. Living Pub. Co., 949 F.2d 576, 583 (2d Cir. 1991) (internal citations and quotation marks omitted). Such proof is required because, "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally." Id. (citing Restatement (Third) of Unfair Competition § 20); see also RVC Floor Decor, Inc., 527 F. Supp. 3d at 325 ("At bottom, the inquiry concerns whether 'there was confusion that could lead to a diversion of sales, damage to goodwill, or loss of control over reputation'.") (citation omitted). "Parties often submit surveys to demonstrate actual confusion." Flushing Bank v. Green Dot Corp., 138 F. Supp. 3d 561, 590 (S.D.N.Y. 2015). Survey evidence is not required to establish actual confusion; however, "the absence of surveys is evidence that actual confusion cannot be shown." The Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d 955, 964 (2d Cir. 1996) (holding a reasonable trier of fact could find actual confusion absent survey evidence).

37

Here, Plaintiff argues there is "substantial evidence" of actual confusion because "a substantial number of purported customers called Plaintiff . . . believing they were calling Defendant." (Pl's Support Memo at 21.)  In particular, Plaintiff points to: (1) several examples of purported customers of Defendant contacting Plaintiff in hopes of reaching LAI, (see Defs' 56.1 Counterstmt. at ¶¶37-42 (recounting several calls received by Plaintiff from persons claiming to have spoken to or worked with employees of LAI); Pl's Suppl. Ltrs., ECF Nos. 85, 88[6]); (2) complaints from purported customers of LAI which were erroneously reported to Plaintiff, (see Defs' 56.1 Counterstmt. at ¶¶43-44); and (3) a negative Yelp review erroneously submitted to

---

[6] On July 9, 2021, January 10, 2022, and January 31, 2022, Plaintiff submitted letters to the Court seeking to supplement the summary judgment record with evidence of "additional incident[s] of actual confusion."  (See Pl's Suppl. Ltrs., ECF Nos. 85, 86, 88.)  On January 10, 2022, Defendants filed a letter opposing Plaintiff's supplemental submissions to the Court, arguing "[s]hould the Court be inclined to consider these additional submissions, Defendants respectfully request that it be granted 30 days to examine the veracity of the purported additional evidence and file its own supplemental briefing to the Court, reporting its findings." (Defs' Suppl. Response Ltr., ECF No. 87.)  The Court has "discretion to allow supplemental evidence into the record when considering a summary judgment motion." Barnes by & on Behalf of United States v. HealthNow New York Inc., No. 16-CV-0088, 2023 WL 5020363, at *6 (W.D.N.Y. Mar. 21, 2023), report and recommendation adopted, No. 16-CV-0088 , 2023 WL 4758750 (W.D.N.Y. July 26, 2023). Here, in light of the nature of the supplemental evidence, in particular: (1) the evidence came into existence after the summary judgment motion had been fully briefed; and (2) the evidence does not place Defendants in a position to confirm or deny its veracity, the Court will consider supplemental evidence submitted by Plaintiff.

Plaintiff's Yelp page by a purported customer of LAI. (Pl's Supp. Ltr., ECF No. 86.)

In contrast, Defendants submit there is no evidence of actual confusion because, <u>inter alia</u>: (1) Plaintiffs have failed to submit survey evidence; (2) there has not been "a single instance of a customer contacting Defendants under the belief they were contacting Plaintiff"; and (3) the declarations submitted in support of Plaintiff's claims of confusion should not be considered by the Court. (Defs' Support Memo at 17-20.)

While the Plaintiff has submitted anecdotal evidence suggesting: (1) Defendants' customers confuse Defendants' company with Plaintiff's company; and (2) the public may be generally confused about the relationship, if any, among the parties, Plaintiff has not submitted <u>any</u> evidence suggesting Plaintiff's customers are being diverted toward Defendants. See <u>RVC Floor Decor</u>, 527 F. Supp. 3d at 326 (noting the inquiry into actual confusion concerns whether there was a diversion of sales from plaintiff to defendant and concluding "inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion") (citations and internal quotation marks omitted). Moreover, Plaintiff has not submitted any survey evidence suggesting actual confusion.

However, Plaintiff has provided <u>some</u> evidence to suggest there was actual confusion which "could inflict commercial injury

39

in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." Advance Mag. Publishers, Inc. v. Norris, 627 F. Supp. 2d 103, 121 (S.D.N.Y. 2008) (citing The Sports Authority, Inc., 89 F.3d at 963).  Namely, Plaintiff submitted evidence of a negative online review posted to Plaintiff's Yelp page, which was intended to be posted on LAI's Yelp page.  (Pl's Suppl. Ltr., ECF No. 86.)  Such negative review could surely inflict commercial injury in the form of a diversion of sale or loss of goodwill or reputation and is sufficient to raise a disputed issue of fact as to whether there was customer confusion regarding Plaintiff and LAI.  Considering the evidence presented, and in the absence of additional instances of actual confusion and survey evidence, the court finds this factor is neutral.

### e. Bad Faith

The "bad faith" Polaroid Factor concerns whether the "junior user intentionally copied and intended to benefit off the good will of the senior user's" mark.  Capri Sun GmbH, 595 F. Supp. 3d at 191.  Although a parties' bad faith may be inferred upon evidence of the junior user's actual or constructive knowledge of the senior user's mark, the "gravamen of bad faith is the intent to sow confusion between the two companies' products." AM Gen. LLC v. Activision Blizzard, Inc., 450 F. Supp. 3d 467, 482 (S.D.N.Y. 2020) (internal quotation marks and citations omitted).

40

In contrast, "[s]election of a mark that reflects the product's characteristics, request for a trademark search and reliance on the advice of counsel are factors that support a finding of good faith." Star Indus., 412 F.3d at 388(citing Lang v. Retirement Living Publ'g Co., 949 F.2d 576, 581 (2d Cir. 1991)).

Here, Defendants have brought forth evidence that, in advance of creating LAI, they: (1) searched for businesses with similar names and did not find any; (2) relied upon attorney advice in adopting the LAI name; and (3) had previously owned businesses with the name "lion" in them. (McCartharn Decl., ECF No. 71, at ¶¶ 7, 9-10.) Plaintiff counters this evidence with evidence: (1) Plaintiff sent Defendants two cease-and-desist letters, informing Defendants of its infringing conduct, which Defendants ignored; and (2) deposition testimony from McCartharn, stating, contrary to his later-filed declaration, that he did not consult an attorney prior to creating the LAI logo. (Pl's Opp, at 18-19; Prutzman Decl. Ex. G, ECF No. 56-7, at 48.)

Based upon the evidence provided, the Court finds, at best, the bad-faith factor is neutral. On one hand, it cannot be reasonably said that the word "Lion" describes HVAC services in any meaningful way, calling into question the motive behind LAI's adoption of the "Lion" name. Defendants also ignored Plaintiff's cease-and-desist letters, further suggesting bad-faith. Both of

41

these facts favor a finding that Defendant did not act in good faith when adopting the LAI name.  However, even ignoring those portions of McCartharn's Declaration which directly conflict with his deposition testimony, see Fed. Deposit Ins. Corp. v. Murex LLC, 500 F. Supp. 3d 76, 94 (S.D.N.Y. 2020) (applying "sham affidavit" doctrine and, therefore, disregarding contradictory testimony of declarants), Defendants have brought forth some evidence of both their attorney reliance and Defendants' attempts to search for "Lion Aire" businesses before adopting the LAI mark. Accordingly, upon the summary judgment record, the Court finds a reasonable fact finder could conclude this factor weighs in favor of either party.

### f. Quality of the Products

The "quality of products" Polaroid Factor "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." NYC Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 320 (S.D.N.Y. 2010) (citing Pfizer Inc. v. Sachs, 652 F. Supp. 2d 512, 523 (S.D.N.Y. 2009)).  Plaintiff argues its reputation has been jeopardized by Defendants, as evidenced by: (1) Plaintiff's receipt of a call from a concerned customer concerning a subpar installation completed by Defendants; (2) Plaintiff's receipt of an email threatening to report Plaintiff to the State of New York based upon McCartharn's alcohol use; and

(3) a negative Yelp review erroneously submitted to Plaintiff's Yelp page by a purported customer of Defendant. (Pl's Support Memo at 22-23; Pl's Supp. Ltr., ECF No. 86.)  Plaintiff further contends the HVAC business is primarily a word-of-mouth business, and therefore, the reputational risk of association with Defendants is even greater. (Pl's Support Memo at 23.)  Defendants argue, in opposition, "Defendants cannot cause injury to Plaintiff's reputation because its reputation is already poor", citing several online review websites. (Defs' Support Memo at 21.)

Based on the evidence provided, the Court finds a reasonable fact finder could find in favor of either party on this factor.

### g. Customer Sophistication

Courts analyze the sophistication of the parties' customers based upon the notion that "the more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar products in the marketplace." Savin Corp. v. Savin Grp., 391 F.3d 439, 461 (2d Cir. 2004).  Generally, when a product is expensive, courts assume purchasers are more sophisticated, and in turn, more discerning. Id.; see also Kohler Co. v. Bold Int'l FZCO, 422 F. Supp. 3d 681, 730 (E.D.N.Y. 2018) ("In assessing the sophistication of the consumer, courts consider

the nature of the product as well as its price."). Here, the parties agree they each "serve primarily residential customers" who spend thousands of dollars on HVAC services.[7] (Defs' 56.1 Counterstmt. ¶35.)

The nature of the businesses and services provided suggest that residential customers, faced with the pricey cost of installing HVAC units, would likely exhibit a high level of sophistication. Accordingly, the Court finds this factor tips in favor of Defendants.

### iii. Weighing the *Polaroid* Factors

The Court cannot say, as a matter of law, that the Polaroid Factors weigh decidedly in favor of either party; and therefore, the Court is precluded from granting summary judgment in either party's favor as to trademark infringement. See Capri Sun GmbH, 595 F. Supp. 3d at 178 (denying parties' cross-motions for summary judgment on trademark infringement claims even where

---

[7] Defendants baldly argue, "Plaintiff concedes in its legal brief the equipment it sells is expensive, typically costing several thousand dollars." (Defs' Support Memo at 22.) Although Plaintiff does not appear to have made that concession in its moving papers, Plaintiff failed to oppose Defendants' argument in its reply. (See generally Pl's Opp'n.) Accordingly, Plaintiff is deemed to have conceded this point. See Napoli v. Nat'l Sur. Corp., No. 21-CV-9279, 2022 WL 1943776, at *6 (S.D.N.Y. May 19, 2022) (deeming plaintiffs to have conceded defendant's argument where plaintiffs did not address argument in their opposition (collecting cases)), report and recommendation adopted, No. 21-CV-9279, 2022 WL 2110606 (S.D.N.Y. June 10, 2022), aff'd, No. 22-1516, 2023 WL 2320332 (2d Cir. Mar. 2, 2023).

"all factors tip in [plaintiff's] favor" because "depending on the light in which the evidence as to various factors is viewed, the balance can be viewed" as favoring either plaintiff or defendant); see also Cadbury Beverages, 73 F.3d at 483 (concluding, on cross-motions for summary judgment, "neither party is entitled to summary judgment on the record" where dispute of facts existed as to several of the Polaroid Factors); Easy Spirit, LLC v. Skechers U.S.A., Inc., 515 F. Supp. 3d 47, 76 (S.D.N.Y. 2021) (denying summary judgment where two Polaroid Factors weighed in favor of one party, and the other factors weighed in favor of the other party or were neutral); RVC Floor Decor, 527 F. Supp. 3d at 329 (denying summary judgment where "the likelihood of confusion presents far too many genuine questions of material fact to justify summary judgment in either party's favor"). Indeed, as elucidated supra, the Court finds two of the Polaroid Factors weigh in favor of Plaintiff, one factor weighs in favor of Defendants, three factors either weigh in favor of Plaintiff or are neutral, and the remaining two factors could weigh in favor of either party, depending on the weight of the evidence. See supra Part II.B.ii. Hence, upon the summary judgment record, the Court cannot find in favor of either party on the issue of trademark infringement. Accordingly, Plaintiff's Motion for Summary Judgment on its trademark claims, including its Motions for Disgorgement and Injunctive Remedies, are DENIED. For the same reasons, Defendants'

Cross-Motion for Summary Judgment as to Plaintiff's trademark claims is DENIED.

### C. Fair Use and Defendants' Request to Amend

Defendants move for leave to amend their Answer to add the affirmative defense of fair use. (Defs' Support Memo at 23.) The general rule in this Circuit is "to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). In determining what constitutes prejudice, courts consider whether the assertion of the defense would:

> (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Id. While the Court acknowledges Defendants' lack of timeliness in asserting this request, Plaintiff has not persuasively asserted that granting Defendants' request would require it to expend additional resources to conduct discovery, delay resolution of this matter, or prevent it from bringing a timely action in another jurisdiction. In its opposition papers, Plaintiff merely claims "it is highly prejudicial to Plaintiff to allow Defendants to [assert the fair use defense] after discovery has closed and after summary judgment briefing has been completed." (Pl's Opp'n at 27, n.7.) Yet, Plaintiff fails to explain how it will be prejudiced.

46

(Id.)   In the absence of any explanation, and given the parties used record evidence to argue for and against the implementation of the fair use defense, (see id. at 27-30; Defs' Support Memo at 23-26), the Court finds Plaintiff will not be prejudiced by the late assertion of Defendants' fair use defense.   Accordingly, Defendants' Motion to Amend its Answer to Assert the Affirmative Defense of Fair Use is GRANTED.[8]  Defendants shall file an amended answer no later than 14 days from the date of this decision.

### D. Dismissal of Defendant Lambot

A corporate officer may be held liable for trademark infringement under the Lanham Act where such person "approved of the infringing act, or [was] a direct participant in the infringing activity, [or was] a moving, active, conscious, force behind the corporation's infringement."  Pado, Inc. v. SG Trademark Holding Co. LLC, 537 F. Supp. 3d 414, 428 (E.D.N.Y. 2021); see also Cartier v. Aaron Faber, Inc., 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) (finding an individual defendant could not be held liable for trademark infringement under the Lanham Act because plaintiffs had

---

[8] Moreover, while the parties make substantive arguments concerning the fair use doctrine and its application here, the Court finds there are genuine issues of material fact concerning whether the doctrine applies.  See Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 92 (2d Cir. 2020) (finding triable issues of fact on the issue of fair use and noting, to demonstrate fair use, a defendant must show the mark was used: "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith").

not met their burden of showing he was "an active force behind" infringing acts or that "he authorized and approved those acts"). A corporate officer is a "moving, active conscious" force behind a company's alleged infringement where "the office was either the sole shareholder and employee, and therefore must have approved the infringing act, or a direct participant in the infringing activity." <u>Mayes v. Summit Ent. Corp.</u>, 287 F. Supp. 3d 200, 212 (E.D.N.Y. 2018) (citing <u>Innovation Ventures, LLC v. Ultimate One Distrib. Corp.</u>, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016) (internal quotation marks omitted)).

Defendants argue Lambot should be dismissed from this action because: (1) there are no specific allegations made against him in the Complaint; and (2) he is a mere employee of LAI who was not involved in the naming of LAI, and therefore, was not a "moving, active conscious force behind" the alleged infringement. (Defs' Support Memo at 26-27.)  Plaintiff counters Lambot is a proper party because: (1) he is LAI's sole sales representative and the "face" of the company; and (2) "willingly participated in Defendants' promotion of the infringing marks." (Pl's Opp. at 30-31.)

The Court agrees with Defendants that Lambot should be dismissed from this action. While it is true Plaintiff asserts in the Amended Complaint "upon information and belief" Defendant

Lambot is a principal, founder, and owner of LAI such that he has control over the selection and use of LAI's marks, (Compl. ¶¶ 6, 16, 18-19), after discovery, Plaintiff has brought forth no evidence to substantiate such claims.  Indeed, the undisputed evidence shows Lambot is an employee of LAI who did not have control over the naming of LAI; therefore, he was not a "moving, active, conscious" force behind the alleged infringement.  (See Lambot Decl., Ex. I, ECF No. 81-1 (Lambot's W-2 form); Prutzman Decl., Ex. E, ECF No. 56-5, at 14 (Lambot testifying he has been an employee of LAI for three years), 28 (Lambot testifying he has no equity stake or ownership interest in LAI); 29 (Lambot testifying he never discussed the naming, trademark, or logo of LAI with McCartharn).)  The fact that Lambot, as an employee of LAI, may have uttered his employer's name to potential customers, is of no consequence; and Plaintiff has cited no case law to that affect.  Accordingly, Defendants' Motion for Summary Judgment as to the dismissal of Lambot is GRANTED.

## CONCLUSION

For the stated reasons, it is HEREBY ORDERED Plaintiff's Motion for Summary Judgment (ECF No. 55) is GRANTED insofar as it seeks dismissal of Defendants' counterclaims for trademark cancellation and libel and is DENIED in all other respects. Defendants' Cross-Motion for Summary Judgment (ECF No. 69) is

GRANTED insofar as it seeks: (1) dismissal of Defendant Lambot;
and (2) to amend its Answer to add the affirmative defense of fair
use; and is DENIED in all other respects.  Defendants shall file
an amended answer no later than 14 days from the date of this
decision.  IT IS FURTHER ORDERED that the parties are referred to
Magistrate Judge Lindsay for all remaining pre-trial matters.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated: August 27, 2024
       Central Islip, New York